## NATIONAL FOUNDRY AND PIPE WORKS *v.* OCONTO WATER SUPPLY CO.

ERROR TO THE SUPREME COURT OF THE STATE OF WISCONSIN.

No. 33. Argued and submitted March 22, 1901.—Decided January 6, 1902.

The rights asserted by the claimants are embraced in three propositions, stated in the opinion of the court. The first of these propositions does not involve a Federal question, and is not reviewed in the opinion of the court. The second and third are as follows: "2. A claim that in virtue of the sale made in the mechanics' lien suit after the decision of the Circuit Court of Appeals in the creditors' suit and the final entry and execution of the mandate, the Pipe Works became the owner of the Water Works plant, entitled to the possession of the same, with a right, however, in the defendant, as a junior lien holder, to redeem by paying the indebtedness due the Pipe Works; and, 3. An assertion that if the Pipe Works had not become the owner of the Water Works plant in virtue of the sale made as stated in the opinion of the court, that corporation, in any event, in virtue of its asserted mechanics' lien, had been vested with a paramount right as against the Water Supply Company, which it was the duty of a court of equity to enforce by compelling payment by the defendant," present Federal questions, which it is the duty of this court to determine.

It is elementary that if from the decree in a cause there be uncertainty as to what was really decided, resort may be had to the pleadings and to the opinion of the court, in order to throw light upon the subject.

Every claim of a Federal right asserted in this case is without merit, and the court below did not err.

The Circuit Court simply declined, in drawing the decree, to construe the opinions of the Circuit Court of Appeals, and deemed that it discharged its duty by obeying the mandate to dismiss the bill for want of equity, without adding any provision which might be construed as adding to or taking away from either of the parties to the record any right which had been established in virtue of the judgment of the Circuit Court of Appeals.

The validity of the title claimed by Andrews & Whitcomb to have resulted from the sale to them in the mortgage foreclosure suit having been an issue and decided in the creditors' suit, all other grounds supposed to establish the invalidity of such title should have been presented in the creditors' suit, and such as were not must be deemed to have been waived, and were concluded and foreclosed by the judgment rendered in such issue.

In January, 1890, the city of Oconto adopted an ordinance authorizing the Oconto Water Company, its successors and assigns, to construct and operate waterworks in said city. Said Oconto Water Company is hereafter referred to as the Water Company. The Water Company commenced the construction of its plant. On August 28, 1890, it contracted with the plaintiff in error, the National Foundry and Pipe Works, Limited—hereafter styled the Pipe Works—for a supply of pipe to be used in said water plant, the pipe to be delivered at intervals and to be paid for partly in cash and partly on credit.

Whilst the pipe was being delivered and placed in position the Water Company, by an instrument in writing, of date September 13, 1890, agreed with a firm known as Andrews & Whitcomb, whose members were domiciled in the State of Maine, in substance as follows:

In consideration of cash advances, to aggregate $40,000, to be made by said firm from time to time for the completion of the waterworks, the Water Company was to execute its promissory notes for the amount of each advance. The Water Company agreed as to collateral security as follows:

"To make an immediate transfer, in trust, to said parties of the first part (Andrews & Whitcomb), of the Oconto water-

works franchise as issued to said Oconto Water Company, together with the entire one hundred thousand ($100,000.00) dollars of stock of said Oconto Water Company, and further agrees to make an immediate issue of one hundred thousand ($100,000.00) dollars in the first mortgage bonds of the said Oconto Water Company; the same to be secured by deed of trust on the entire Oconto waterworks franchise and all of the rights and privileges of said company in said waterwork franchise; said deed of trust to be made to some trust company to be hereafter mutually agreed upon."

About contemporaneously with the execution of said agreement a formal mortgage was given to Andrews & Whitcomb by the Water Company, upon "all the rights, privileges, immunities, franchises and powers, of whatsoever name or nature, which had been granted to it."

This mortgage was not at once placed on record, and moreover a considerable time elapsed before delivery was made to Andrews & Whitcomb of the stock and bonds provided for in the agreement previously referred to.

In the meanwhile all the pipe contracted for was delivered and the same had been used in connection with the waterworks plant. Although the Water Company was during this time obtaining money from Andrews & Whitcomb, it failed to use the money in payment for the pipe. In consequence the Pipe Works on September 15, 1890, recorded a claim for a lien on the plant of the Water Company. After the recording of this lien, and on January 13, 1891, the mortgage in favor of Andrews & Whitcomb, which, as already stated, had been executed on or about September 13, 1890, was placed on record.

On January 30, 1891, the Pipe Works filed its bill in the Circuit Court of the United States for the Eastern District of Wisconsin to foreclose its asserted lien and to procure a sale thereunder of the plant of the waterworks company and of the interest of that company in certain real estate upon which the company had constructed its pump and water wells, the legal title to the real estate being in the city, but the company having taken possession, under an agreement by which it secured the right to obtain a conveyance, from the city, upon compli-

ance with certain conditions. To this bill the Water Company was alone made defendant. The lien asserted was contested by the defendant. This litigation will be hereafter referred to as the mechanics' lien suit.

Andrews & Whitcomb having made the advances provided in the contract of September 13, 1890, and additional advances being required, they were made by Andrews & Whitcomb under contracts executed on March 13 and May 16, 1891, of tenor like unto the September agreement, the collateral security provided under that contract being made liable for the new advances. No independent mortgage was executed.

The Water Company not having performed the stipulations made in its contracts with Andrews & Whitcomb, on June 17, 1891, that firm commenced proceedings in a court of the State of Wisconsin to foreclose an asserted lien which it claimed was created upon the franchise and property by the mortgage and contracts to which we have already referred. This litigation will be hereafter referred to as the mortgage foreclosure suit. To this suit the Water Company was alone made defendant. On August 13, 1891, a personal judgment was entered for $63,889.23 and costs, and a sale was decreed to enforce the lien declared in the following clause of the conclusions of law of the court:

"Third. In addition to such personal judgment, the plaintiffs are entitled to a further judgment decreeing, adjudging and declaring the amount thereof, together with the proper costs for the enforcement of the same, a lien upon all of the property shown by the complaint in this action and the proofs adduced by the plaintiff herein in support thereof to have been sold, assigned, transferred and set over or pledged to the plaintiffs by the defendant in trust and as collateral security for the repayment of the sums loaned and advanced the defendant by the plaintiffs under the contracts set forth in the complaint."

Under this decree a sale was made at public auction to Andrews & Whitcomb of the rights, privileges, immunities, franchises and powers granted to the Water Company by the ordinance of July 9, 1890, and the stock and bonds pledged as aforesaid. The sale was confirmed by the court and possession

of the waterworks plant was taken by Andrews & Whitcomb. At the offering a representative of the Pipe Works notified those present that the Pipe Works claimed a paramount lien upon the property proposed to be sold and that the purchaser would take subject to its rights.

Pending the mechanics' lien suit and the sale and purchase by Andrews & Whitcomb, the Pipe Works brought an action at law against the Water Company in the Circuit Court of the United States for the Eastern District of Wisconsin, making also defendants thereto Andrews & Whitcomb, sued as garnishees. A judgment for the amount due was obtained on January 2, 1892, as against the Water Company, but the action was never prosecuted to a termination as against the garnishees.

On January 11, 1892, the Pipe Works filed in the Circuit Court of the United States a creditors' bill, based upon its judgment at law, and the return of execution thereon unsatisfied. This litigation will be hereafter referred to as the creditors' suit. The Water Company, Andrews & Whitcomb, an alleged corporation styled the Oconto City Water Supply Company, to be hereafter referred to as the Water Supply Company, as well as various parties whom it was claimed were liable as stockholders for unpaid subscriptions, and others, were made defendants. It would seem that in the original bill the Water Supply Company was averred to be a corporation and a resident or citizen of Wisconsin, but Andrews & Whitcomb denied such averment. Thereafter, in an amendment to the creditors' bill, it was alleged that subsequently to the filing of the bill the Water Supply Company had been organized, and that it claimed to have derived, through Andrews & Whitcomb, title to the rights and property of the Water Company, but that said claim was subordinate to the lien of the plaintiff. Whether at the time of this amendment the Water Supply Company had acquired the waterworks plant, or such acquisition was made subsequent thereto, does not appear, nor is it stated in the record that it was ever served with process.

A full statement of the grounds for the equitable relief asked for in the creditors' bill is contained in the opinion in *Andrews* v. *National Foundry & Pipe Works, Limited*, reported in 76

Fed. Rep. 167. . It suffices here to say that the bill assailed the validity of the mortgages to Andrews & Whitcomb and the transfer of stock and bonds to them, and attacked their foreclosure sale, and asserted the liability, as stockholders, of Andrews & Whitcomb and others for unpaid subscriptions to the stock of the Water Company. A receiver was asked to take possession of and operate the waterworks plant, then in the possession of Andrews & Whitcomb, and an injunction was prayed to restrain Andrews & Whitcomb from holding, managing or interfering in any way with the rights, franchises, plant, property, rents, profits, bonds and affairs in the hands of said receiver, and from asserting any right, title or interest in the property or the rents, issues and profits thereof until the further order of the court.

The mechanics' lien suit culminated on October 3, 1892, in a decree in favor of the Pipe Works, recognizing its mechanics' lien for the amount of pipe unpaid for, and a sale was decreed to satisfy such indebtedness. The conclusions of the Circuit Court were supported by an elaborate opinion holding that, under the laws of the State of Wisconsin, a lien existed which it was the duty of a court of equity to enforce. 52 Fed. Rep. 43. From the decree thus rendered an appeal was prosecuted to the Circuit Court of Appeals for the Seventh Circuit.

On October 10, 1892, the Circuit Court, in the creditors' suit, appointed a receiver and allowed a preliminary injunction. 52 Fed. Rep. 29. From the interlocutory decree granting an injunction an appeal was prosecuted to the Circuit Court of Appeals for the Seventh Circuit.

On November 7, 1893, the Court of Appeals for the Seventh Circuit (Woods, Circuit Judge, and Bunn and Baker, District Judges, sitting) affirmed the decree of the court below in the mechanics' lien suit, in which decree had been declared the existence of the mechanics' lien asserted by the Pipe Works. The court in a *per curiam* opinion adopted the reasons expressed by the lower court. 18 U. S. App. 380; 59 Fed. Rep. 19, 20.

On January 11, 1894, the Circuit Court of Appeals determined the appeal taken by Andrews & Whitcomb from the

interlocutory order granting an injunction in the creditors' suit. The lower court was reversed, the court holding, for the reasons expressed in its opinion, that the contracts made between the Water Company and Andrews & Whitcomb were not *ultra vires* or otherwise invalid, and that there had been no legal justification for the allowance of an injunction. The court said, however, (p. 472): "Whether or not, and to what extent, the mortgage of the franchises covers the plant of the company, need not now be considered." After the filing in the Circuit Court of the mandate from the Circuit Court of Appeals in such cause the Pipe Works amended its bill by setting up the final decree it had obtained on October 3, 1892, in the mechanics' lien suit affirmed as above stated by the Circuit Court of Appeals. Such lien it was averred was paramount to any rights asserted by Andrews & Whitcomb or their privies. To the bill and amendment Andrews & Whitcomb filed separate and elaborate answers. Without going into detail, the answers asserted the validity as mortgages of the instruments executed by the Water Company in favor of Andrews & Whitcomb and their operative force upon the property and franchises, denied any liability of the members of said firm as stockholders, and asserted that they were not bound by the decree in the mechanics' lien suit, because they were neither parties nor privies to that action, and they further claimed that under the statutes of Wisconsin no lien could arise in favor of one furnishing materials or supplies in connection with waterworks, and that the decision of the Federal court to the contrary was erroneous, as the Supreme Court of the State of Wisconsin had, since the decision rendered by the Federal court, held that no mechanics' lien could be created by such a transaction.

Upon these issues and similar issues joined upon certain interventions of creditors asserting mechanics' liens upon the property of the Water Company, which it is unnecessary to refer to, a decree was entered on July 17, 1895, granting all the relief demanded by the Pipe Works Company and the intervenors. 68 Fed. Rep. 1006.

The court held, first, that there was a mechanics' lien in favor of the Pipe Works; that whilst it was true that, subsequent to

its decision in the mechanics' lien suit, the Supreme Court of Wisconsin had decided that a mechanics' lien could not arise, on the plant of the waterworks, under the circumstances disclosed, the Federal court was not bound by such interpretation of the state statute, and it adhered to its own previous conclusion to the contrary; second, that Andrews & Whitcomb were in legal effect the owners of all or nearly all the stock and liable for the unpaid subscriptions thereon to the extent necessary to pay the debts of the Water Company; third, that as stockholders said firm were bound by the decree in the mechanics' lien suit, because, as stockholders, they were privies to the decree; fourth, that assuming the validity of the mortgage in favor of Andrews & Whitcomb, yet as it was recorded subsequent to the time when the mechanics' lien in favor of the Pipe Works became operative, the mortgage was subordinate to such mechanics' lien; fifth, that the bonds issued by the Water Company and which were delivered to Andrews & Whitcomb and a defendant trust company were void; and, sixth, that the instruments executed in the name of the Water Company in favor of Andrews & Whitcomb were made in good faith and for a valuable consideration, and were not withheld from record by the consent or procurement of Andrews & Whitcomb nor in fraud of creditors.

An appeal was prosecuted by the city of Oconto, by Andrews & Whitcomb, and also by the Water Supply Company, as the successor in interest of Andrews & Whitcomb, by reason of having acquired, pending the suit, the rights of the firm in the matter in controversy. On this appeal, the Circuit Court of Appeals—Woods and Showalter, Circuit Judges, and Seaman, District Judge, sitting—first considered whether the alleged mechanics' lien existed in favor of the Pipe Works. The court declared that by the authority of the thing adjudged, resulting from the decree in the mechanics' lien suit, the existence of such a lien was established as between the Pipe Works and the Water Company. Coming to consider whether the lien existed as between the Pipe Works and Andrews & Whitcomb and their privies, the Water Supply Company, the court held that inasmuch as the Supreme Court of the State of Wisconsin, inter-

preting the statutes of Wisconsin, since the decision of the Circuit Court of Appeals in the mechanics' lien suit, had held that no mechanics' lien was authorized by such statutes against the plant of the Water Company, the Federal court should follow the construction of the Wisconsin statute announced by the highest court of the State, even though in doing so it became necessary to take a different view from that which the court had previously announced. The Circuit Court of Appeals therefore decided that there was no mechanics' lien in favor of the Pipe Works or any of the intervenors as against Andrews & Whitcomb or the Water Supply Company.

Approaching next the consideration of the correctness of the ruling of the Circuit Court, that Andrews & Whitcomb were privies to the decree against the Water Company in favor of the Pipe Works, because they were stockholders in the company, the court decided that whilst undoubtedly a stockholder was a privy to actions against the corporation in which he was a stockholder, when brought upon money demands asserted against the corporation, yet, as Andrews & Whitcomb held the stock of the Water Company, not as subscribing stockholders, but as contract creditors of the Water Company, the principle upheld by the lower court had been erroneously applied, and therefore Andrews & Whitcomb were not privies to the decree recognizing the mechanics' lien and were in no respect bound thereby. In so far as it had been decided by the court below that the mortgage to Andrews & Whitcomb was subordinate to the mechanics' lien, because recorded subsequently to the placing on record of the affidavit as to such lien, the court said (46 U. S. App. 295): "The lien decrees out of the way all questions concerning the recording of that mortgage and the antecedent contracts disappear."

The grounds upon which the lower court held that Andrews & Whitcomb were liable as stockholders to make payment of unpaid subscriptions were reviewed and held to be unfounded. The validity of their mortgage for the whole amount of their debt and the paramount nature of its lien was recognized, and the court held that it was unnecessary to determine whether the mortgage bonds were valid, because as the mortgage for the

debt to Andrews & Whitcomb, for which the bonds were merely collateral, was recognized and enforced it became unnecessary to consider that subject. In respect to the title of Andrews & Whitcomb, the court for reason stated, said (46 U. S. App. 299): "We are of the opinion that the mortgage of the franchise carried with it the water plant."

The decree of the lower court was reversed and the cause remanded with instructions to-dismiss the bill. The opinion of the court is reported in 46 U. S. App. 281, and 76 Fed. Rep. 166.

In an opinion reported in 46 U. S. App. 619, and 77 Fed. Rep. 774, a petition for a rehearing was denied. Among other things the court reiterated its previous ruling that the mortgage to Andrews & Whitcomb of the franchise extended to the waterworks plant, and that Andrews & Whitcomb were not concluded by the mechanics' liens decrees, and hence though purchasing at public auction upon the sale under the foreclosure proceedings, during the pendency of the mechanics' lien foreclosure suit the firm was not, as to the latter proceeding, in the category of a purchaser *pendente lite*, and the doctrine of *lis pendens* did not apply. In the course of the opinion the court said (46 U. S. App. 624):

"The question whether the appellees, as judgment creditors of the Oconto Water Company, have a right to redeem from the sale made to Andrews & Whitcomb upon their foreclosure decree, to which the appellees were not parties, does not, in our opinion, arise upon this record, and will not be prejudiced by our decision."

And, taking notice of this court's own records, it is to be observed that, after the denial by the Circuit Court of Appeals for the Seventh Circuit of the petition for a rehearing in the creditors' suit, application was made to this court for a writ of certiorari, which was refused on April 26, 1897. 166 U. S. 721. Subsequently in the Circuit Court of Appeals, on motion by appellants "that mandate should direct that provision be made in the decree for the conveyance to appellant Oconto Water Supply Company of the legal title to the land holding the pump station and wells of the waterworks plant," the court on May 18, 1897, overruled the motion with leave to the court below to

make necessary and proper orders for the transmission of the legal title to the property.

After receipt of the mandate of the Circuit Court of Appeals, the Circuit Court, on July 29, 1897, entered a decree consisting of eight numbered clauses. The sixth, seventh and eighth embodied a decree against one Sturtevant, (against whom a decree *pro confesso* had been entered,) holding him liable in the sum of ninety-nine thousand dollars for unpaid subscriptions and ordering payment of the sum due the pipe works and the intervening and unsecured creditors and the costs of the action. The decree, so far as it affected the other defendants, is as follows:

"This cause came on to be reheard upon the record herein and upon the mandates of the United States Circuit Court of Appeals for the Seventh Circuit upon the appeals from the decree entered herein on the 17th day of July, 1895, taken by the said defendants, S. D. Andrews, W. H. Whitcomb, Oconto City Water Supply Company, and The City of Oconto, which said mandates have heretofore been filed herein, and, after argument of counsel, upon consideration thereof, it was ordered, adjudged and decreed as follows, to wit:

"First. That the decree of said court of July 17, 1895, do stand as entered, except that as to said defendants, S. D. Andrews, W. H. Whitcomb, Oconto City Water Supply Company and city of Oconto, the bill of complaint herein be, and the same is hereby, dismissed for want of equity, with costs in favor of said defendants, taxed at the sum of one thousand eight hundred and twenty $\frac{35}{100}$ dollars, except that the defendant Oconto City Water Supply Company is required to pay the amount adjudged in said decree or judgment in favor of Albert E. Smith, receiver, being the sum of twenty-five hundred dollars ($2500).

"Second. That said bill of complaint be, and the same is hereby, dismissed as to the defendants Charles C. Garland, F. H. Todd, Matt. S. Wheeler, A. J. Elkins and N. S. Todd for want of service of process upon them, but without costs.

"Third. That a decree *pro confesso* having been heretofore entered against the said defendants, Minneapolis Trust Company, Oconto National Bank and S. W. Ford, all of which said

defendants were duly served with process or duly appeared herein, the said bill be, and hereby is, dismissed as to said defendants, but without costs.

"Fourth. That the clerk of this court be, and he is hereby, directed to restore to the defendants S. D. Andrews and W. H. Whitcomb the possession of all the bonds secured by the mortgage or trust deed of the Oconto Water Company dated the 1st day of November, 1890, which were deposited with said clerk by said Andrews and Whitcomb; that such restoration by said clerk to said Andrews and Whitcomb is, and shall be, without adjudging the validity or invalidity of the said bonds in their hands or the issue of the same by said Oconto Water Company.

"Fifth. That the legal title to the land upon which the pumping station and wells of the water works plant are located, which heretofore by deed dated the 31st day of January, A. D. 1894, was conveyed by the order of this court by the city of Oconto to the said defendant, Oconto Water Company, the description of which said land is more fully set out in said deed as follows, to wit: . . . be, and the same is hereby, passed and transferred by virtue of the instruments of mortgage dated September 13, 1890, and March 13, 1891, executed by said defendant, Oconto Water Company, to said defendants, S. D. Andrews and W. H. Whitcomb, and of the sale in the proceedings to foreclose the same to the said defendant, Oconto City Water Supply Company, as the assignee and successor in interest of the said defendants, S. D. Andrews and W. H. Whitcomb, and that the said defendant, Oconto Water Company, and its receiver, Albert E. Smith, by separate instruments duly witnessed and acknowledged so as to entitle the same to record, execute and deliver conveyances thereof to the defendant, Oconto City Water Supply Company, but without prejudice to any rights which said complainant or said R. D. Wood & Company may have under their said mechanics' lien decrees or otherwise to redeem from said instruments of mortgage or either of them, or from the sale under the proceedings to foreclose the same."

Although the decree rendered in favor of the Pipe Works in

its mechanics' lien foreclosure suit authorized a sale of the waterworks plant to enforce the lien found to exist, no sale had taken place up to the time the creditors' suit was decided by the Circuit Court, because of a restraining order preventing such sale. When, however, the Circuit Court entered its decree in favor of complainant in the creditors' suit, the fifth clause thereof was couched in the following language: "Fifth. The complainant and R. D. Wood" (an intervening creditor claiming under an alleged mechanics' lien decree) "are authorized to proceed to the enforcement and satisfaction of their respective liens in accordance with their several decrees." The right thus recognized was suspended by the appeal which was taken to the Circuit Court of Appeals.

When the mandate of the Circuit Court of Appeals in the Pipe Works creditors' suit came to the Circuit Court it would seem some difficulty arose as to the form of the decree, and in consequence the court filed a memorandum opinion which we find printed in the brief of counsel for the plaintiff in error. The sixth clause of that memorandum, which indicates the reasons by which the Circuit Court was led to the conclusion that in executing the mandate of the Circuit Court of Appeals it was unnecessary to insert in the final decree of the Circuit Court a positive inhibition against any further attempt on the part of the Pipe Works to enforce, as against Andrews & Whitcomb and the Water Supply Company, its alleged mechanics' lien, if it possessed any, is as follows :

"Sixth. The order of March 5, 1894, restraining the marshal from proceeding to sell under the mechanics' lien decree, was superseded by the fifth clause of the decree of July 17, 1895. There would seem to be no necessity for further order in respect thereto. If the contention of the complainant that the mechanics' lien decree took precedence of subsequent mortgages was not disposed of by the Court of Appeals, it should be placed in a position to be able to redeem from the sale under the mortgages to Andrews & Whitcomb. If that contention was disposed of by the Court of Appeals, a sale under the mechanics' lien decree can do no harm to Andrews & Whitcomb or their successor in interest, beyond possibly creating

a cloud upon their title. The court would not, however, permit this to be done if it was clear from the several opinions of the Court of Appeals that the contention in that respect had been determined.

" I cannot spell out from the opinions of that court that the precise contention had been considered and determined, unless it must be held to have been so determined by the fact of the reversal of the decree of this court and the dismissal of the bill for want of equity as against Andrews & Whitcomb and their successor in interest."

After the entry in the creditors' suit of the final decree of the Circuit Court, the Pipe Works directed the marshal to execute the order of sale contained in the decree of October 3, 1892, in the mechanics' lien suit. On August 23, 1897, in said suit, sale was made to the Pipe Works of the waterworks plant and all the right, title and interest of the Oconto Water Company in and to the premises upon which the same were located, together with the franchise of maintaining and operating said plant. A day or two afterwards the sale was confirmed by the Circuit Court, and a deed was executed and delivered by the marshal to the Pipe Works, who caused the same to be recorded.

On December 28, 1897, the Pipe Works commenced the present action in a state court in Wisconsin, naming as sole defendant the Oconto City Water Supply Company. The complaint contained averments as to the incorporation of the defendant, the sale and delivery of pipe by the plaintiff to the Oconto Water Company, the decree of October 3, 1892, in the mechanics' lien suit and the sale to and purchase by it in August, 1897, under such decree. The making by the Water Company to Andrews & Whitcomb of the alleged mortgages or pledges heretofore referred to was next averred, as also the proceedings instituted by Andrews & Whitcomb culminating in the foreclosure of said mortgages and the sale thereunder to Andrews & Whitcomb, and the taking possession by virtue of such sale of the plant and its transfer thereafter by Andrews & Whitcomb to the defendant, the Water Supply Company. It was also alleged that Andrews & Whitcomb, prior to the making of the mortgages or pledges in question, had knowledge of the fact that

plaintiff had furnished to the Water Company pipe as aforesaid for use in its plant, and that Andrews & Whitcomb, prior to the commencement of their foreclosure suit, knew that plaintiff had filed its claim for a mechanics' lien upon the plant of the Water Company and had commenced proceedings for the enforcement of such lien. It was also averred that the Water Supply Company, when it took possession of the plant, had knowledge or notice that the pipe furnished had not been paid for and that proceedings were pending to enforce a mechanics' lien therefor. The specific averment was made that the title acquired by the Pipe Works under its mechanics' lien foreclosure proceeding was prior to any lien upon or title to said plant then or at any time held or acquired by the Water Supply Company. The prayer for relief, as amended, was as follows:

" Wherefore said plaintiff demands judgment against said defendant for the value of said pipe and materials furnished to said Oconto Water Company and for the amount of its said lien against the property of said Oconto Water Company; that the possession and use of said plant be given to it, and that said defendant, its officers, servants and agents, may be perpetually enjoined from occupying, possessing or using the same and any of the pipe so furnished by said plaintiff and being a part of the water plant or system now operated by it, or that said defendant, its officers, servants and agents, may be enjoined from occupying, possessing, or using said plant or any of the pipe so furnished by said plaintiff for said plant, unless within such reasonable time as said court may prescribe for that purpose said defendant shall pay to said plaintiff the amount due to it under its mechanics' lien decree, as hereinbefore set forth, and that said defendant be ordered and required to pay the amount of said plaintiff's judgment against said Oconto Water Company and against said defendant herein in such manner as to this court shall seem just and pursuant with its equitable powers and in accordance with the practice in such cases, and said plaintiff prays for such other, further or different relief as to the court shall seem just and proper, and for the costs of this action."

In the answer filed on behalf of the Water Supply Company, the averments of the complaint that the Pipe Works was the

owner or holder of any right, title or interest in or to the said waterworks plant or any pipe constituting a part of said plant, was traversed. By leave of court an amendment was filed to the answer, in which the defendant set up the plea of *res judicata* arising from the decree of the Circuit Court of Appeals in the creditors' suit. The case was tried by the court without a jury, special findings of fact were made respecting the judgment in the creditors' suit, the conclusions of law being embodied in the following decree:

" It is adjudged that the plaintiff has not and never had any lien on the waterworks plant and property on which it claims such lien by its complaint in this action; that the defendant holds and owns said plant and property by claim and title paramount to and free and clear of any claim or lien of the plaintiff; that the plaintiff is not entitled to any relief demanded in the complaint, as amended or otherwise.

" It is further adjudged that this action be, and the same is hereby, dismissed for want of equity, and that the defendant do have and recover of and from the plaintiff the sum of sixty-three and $\frac{92}{100}$ dollars, its costs and disbursements in this action."

On appeal, the Supreme Court of Wisconsin affirmed the judgment of the trial court. 105 Wisconsin, 48. A writ of error from this court was allowed by the Chief Justice of the Supreme Court of Wisconsin. It was therein recited that in this suit there " was drawn in question the validity and binding effect of a title, right and privilege claimed by the said National Foundry and Pipe Works, Limited, under authority exercised under the United States, and decrees duly entered in the Circuit Court of the United States for the Eastern District of Wisconsin," and that " the decision of the said Supreme Court of the State of Wisconsin was against the right and privilege specially set up by said National Foundry and Pipe Works, Limited, under said authority and decrees."

*Mr. George H. Noyes* for plaintiff in error.

*Mr. George G. Greene,* for defendant in error, submitted on his brief, on which was also *Mr. Jerome R. North.*

Mr. Justice White, after making the foregoing statement, delivered the opinion of the court.

In order to clearly present the simple issue arising on this record for decision we have been obliged to make the foregoing lengthy statement of the facts which are involved in this unnecessarily protracted litigation.

When the allegations of the complaint by which this action was commenced are ultimately resolved, all the rights which they assert are embraced within the following propositions:

1. A contention that the Water Supply Company, by virtue of its acquisition from Andrews & Whitcomb, was a mere successor corporation of the original Water Company, and became bound for all its indebtedness, including, of course, the debt due the Pipe Works, and this irrespective of the existence of a mechanics' lien;

2. A claim that in virtue of the sale made in the mechanics' lien suit after the decision of the Circuit Court of Appeals in the creditors' suit and the final entry and execution of the mandate, the Pipe Works became the owner of the waterworks plant, entitled to the possession of the same, with a right, however, in the defendant as a junior lienholder to redeem by paying the indebtedness due the Pipe Works; and,

3. An assertion that if the Pipe Works had not become the owner of the waterworks plant in virtue of the sale made as just stated, that corporation, in any event, in virtue of its asserted mechanics' lien, had been vested with a paramount right as against the Water Supply Company, which it was the duty of a court of equity to enforce by compelling payment by the defendant.

In effect, these questions were all concluded adversely to the plaintiff in error by the court below, the rights embraced in the first proposition were decided to be without merit because the facts disclosed the Water Supply Company to be an independent corporation and not bound as a successor company for the indebtedness of the original Water Company. As this proposition does not involve a Federal question, we may not review it. Indeed, the finality of the decision below on the subject is

recognized by the plaintiff in error, since the assignment of error made in this court seeks to raise no question on such subject.

All the rights asserted by the plaintiff in error which are embraced in the second and third propositions were decided adversely below, on the ground that they were not open to inquiry, because concluded by the presumption of the thing adjudged, arising from the final decree in the creditors' suit. And it is upon the asserted erroneous application by the court below of the plea of *res judicata* that all the Federal questions urged must, in effect, depend.

The proposition is that the court below denied due effect to a decree of the Federal court, by maintaining the plea of *res judicata* predicated on a decree of such court. This contention, apparently, is not that due effect was denied to the decrees of a Federal court, but that too great an effect was given. When, however, the proposition is stripped of the seeming confusion which arises from the form in which it is stated, it becomes clear that, ultimately considered, it really involves the assertion that the court below refused to give due effect to the decree of a Federal court. This is so, because the proposition substantially is that the state court, in maintaining the plea of *res judicata* resulting from the decree in the creditors' suit, denied the rights which were vested in the Pipe Works by virtue of the decree in the mechanics' lien suit. The argument in substance is therefore that as the rights under the mechanics' lien decree were not impaired or destroyed by the decree in the creditors' suit, the consequence of erroneously deciding that they were obliterated by the decree in the creditors' suit, was to refuse to give due effect to the rights vested in the Water Company as a result of the decree in its favor in the mechanics' lien suit.

As it is thus demonstrated that the determination whether the court below correctly applied the plea of *res judicata* necessitates our deciding whether due effect was given to the decree in the mechanics' lien suit, a Federal question is presented which it is our duty to determine. *Jacobs* v. *Marks*, 182 U. S. 583, 587; *Hancock National Bank* v. *Farnum*, 176 U. S. 640,

645; *Pittsburg &c. Railway Co.* v. *Long Island Loan & Trust Co.*, 172 U. S. 493, 507, and cases cited.

In order to correctly decide what was concluded by the decision of the Circuit Court of Appeals in the creditors' suit and the final decree entered in such cause, it must be ascertained who were the parties to that cause, what were the issues therein presented for adjudication and what was decided thereon. It is elementary that if from the decree in a cause there be uncertainty as to what was really decided, resort may be had to the pleadings and to the opinion of the court in order to throw light upon the subject. *Baker* v. *Cummings*, 181 U. S. 117; *Last Chance Mining Co.* v. *Tyler Mining Co.*, 157 U. S. 683, 688.

Conceding for the present that the face of the final decree in the creditors' suit leaves uncertain exactly what was concluded, we will resort to the means of elucidation just referred to, viz., the pleadings and opinions rendered, in order to ascertain who were the opposing parties, what were the issues joined between them and the matters finally determined in the cause. So doing, it appears that the parties to the cause were the Pipe Works on the one side and Andrews & Whitcomb and the Water Supply Company and others on the opposing side. It also appears that the following, among other controversies, were directly at issue in the cause :

1. Had the Pipe Works, as to Andrews & Whitcomb and their privies, a lien upon the plant and franchise of the waterworks, arising from the sale of the pipe, the recording of the claim for a lien and the recognition of such lien in the decree of the Circuit Court of the United States in the mechanics' lien suit, and this although the plant and franchise had come into the possession of Andrews & Whitcomb under the sale in their mortgage foreclosure suit?

2. Was the mortgage referred to a valid instrument? and,

3. Was title vested in Andrews & Whitcomb to the waterworks plant and franchise by reason of the sale to them under the decree in the mortgage foreclosure suit?

Between the parties we have named and upon the issues just stated it is free from doubt that it was decided that Andrews

& Whitcomb were lawfully in possession in virtue of the sale made in the mortgage foreclosure, and that under the law of Wisconsin there was no lien in favor of the Pipe Works as against Andrews & Whitcomb or their assigns upon the franchise and plant in question arising either from the law of that State, the recording of the alleged lien or the decree rendered in the mechanics' lien suit. It hence results that every claim of a Federal right here asserted is without merit and that the court below, in enforcing the principle of the thing adjudged, did not err, and of course did not refuse to give due effect to the mechanics' lien suit decree.

It is insisted, however, that although these conclusions may be inevitable from a consideration together of the pleadings, the opinions and the final decree in the creditors' suit, the contrary result is impelled if merely the final decree entered by the Circuit Court upon the mandate of the Circuit Court of Appeals is taken in view. The argument is that as the decree is unambiguous it is the law of the case, and resort cannot be had to other sources of information. In effect, the contention comes to this, that although it may be patent that the issues between the parties, as above stated, were determined, yet as the decree entered by the Circuit Court failed to express such conclusion, the parties are bound by the decree as entered, as they did not avail themselves of a proper remedy, by mandamus or otherwise, to correct the frustration of the results of the decisions of the Circuit Court of Appeals, which the argument necessarily assumes must have been brought about by the decree made by the Circuit Court.

But the decree of the Circuit Court does not support the contention based upon it. That decree, in express terms, dismissed the creditors' bill as to Andrews & Whitcomb and the Water Supply Company, for want of equity, without any qualification or reservation whatever. It in express terms passed the legal title to the real estate upon which was located the pumping station and wells of the Water Company to the Water Supply Company, as the assignees of Andrews & Whitcomb, such transfer of title being declared to be made by virtue of the mortgage to Andrews & Whitcomb and the sale to them in

their mortgage foreclosure suit. It is true that in the clause making this transfer it was declared that it was " without prejudice to any right which said plaintiff . . . may have under their mechanics' lien decree or otherwise to redeem from said *instruments of mortgage* or either of them or from the sale under the proceedings to foreclose the same." But this was a mere reservation of the right to redeem, if any existed. It left the Pipe Works in the position where, if its right had not been foreclosed as the necessary consequence of the dismissal of the bill for want of equity, it would not be so foreclosed in consequence of the specific direction for the transfer of the legal title to the property. In other words, the Circuit Court, in complying with the positive directions of the Circuit Court of Appeals, but refused to interpret specifically the scope and effect of the mandate of the appellate court, and left that mandate to operate in its own language. At best, the reservation, when considered in connection with the other portions of the decree, can only have the effect of creating an uncertainty as to what was intended, and this being the case, resort to the proper sources of information, to which we have already alluded, dispels the doubt and leaves the matter free from difficulty. And this conclusion is equally made imperative by a consideration of the memorandum opinion of the Circuit Court—set out in our statement of the case—relating to the drawing of the proposed final decree. From that document it is made clear that the Circuit Court simply declined, in drawing the decree, to construe the opinions of the Circuit Court of Appeals, and therefore deemed that it discharged its duty by obeying the mandate to dismiss the bill for want of equity, without adding any provision which might be construed as adding to or taking away from either of the parties to the record any right which had been established in virtue of the judgment of the Circuit Court of Appeals.

Another contention remaining to be considered is that even though the court below correctly applied the principle of *res judicata*, it yet, in granting affirmative relief, declined to give due effect to the decree in the mechanics' lien suit. On this subject the argument is that although as regards Andrews &

Whitcomb and the Water Supply Company, it be recognized that it had been conclusively determined that the Pipe Works had no mechanics' lien whatever, yet as such lien was finally decreed in the creditors' suit as against the water company, because of the thing adjudged arising from the decree in the mechanics' lien suit, therefore a right to redeem from the sale to Andrews & Whitcomb existed, and such right was nullified by the broad grant of affirmative relief made in this cause by the court below. Whether the pleadings in the cause justified a grant of affirmative relief, considered as a mere question of practice, presents no Federal question. The claim that because by the thing adjudged it is indisputable that the Pipe Works had a lien against the water company, it therefore follows that there is still a right to redeem as against Andrews & Whitcomb and the Water Supply Company, even although it was established by the effect of *res judicata* arising from the creditors' suit, that the lien as to the parties named was inoperative and a nullity, is but another form of asserting that the decree in the creditors' suit was not *res judicata* between the Pipe Works and Andrews & Whitcomb and the Water Supply Company.

In conclusion, we need only remark that the observations just made are equally applicable to the elaborate contention, in the brief of counsel, that as the mechanics' lien suit was pending in a Federal court when Andrews & Whitcomb instituted their foreclosure proceedings in the state court, the Federal court had exclusive jurisdiction of the *res*, and the state court was without power in the premises. The validity of the title claimed by Andrews & Whitcomb to have resulted from the sale to them in the mortgage foreclosure suit having been an issue and decided in the creditors' suit, the contention now being noticed and all other grounds supposed to establish the invalidity of such title should have been presented in the creditors' suit, and such as were not must be deemed to have been waived, and were concluded and foreclosed by the judgment rendered in such issue. *Dowell* v. *Applegate*, 152 U. S. 327, 343.

*Affirmed.*